We'll start with United States v. Andasola, number 19-1482. Council, you may proceed. I believe you'll get us started. Mr. Ross Chabot. Mr. Honor, good morning. May it please the court, Jake Ross Chabot on behalf of the appellant Jose Andasola. Mr. Andasola testified that a key piece of the government's evidence, the video footage showing him distributing packages of drugs to a criminal informant, was fabricated, which he knew because he had seen the original, unedited version. The district court instructed the jury that the defendant's testimony was inaccurate, that as a matter of fact, the jury the video had seen was the only video. By introducing new evidence to the jury, the district court violated Rule 605. And because the district court's instruction completely eviscerated Mr. Andasola's credibility and his defense, the error was not harmless beyond a reasonable doubt. Rule 605 generally prohibits judicial testimony. Counsel, could I just ask you to clarify one point? It seems from the government's brief that it discusses two alleged errors. One, the Rule 605 error that you're mentioning, and the other invading the province of the jury. Do you agree that there are two separate issues, or are those just two sides of the same coin? I mean, I think they can be separate issues, and here they're just sort of inextricably intertwined. Because you can imagine a scenario where a judge invades the province of the jury by just instructing the jury that they have to accept this fact that I'm telling you. That invades the province of the jury and is a Rule 605 error. And so that's what we're raising here, that it's specifically a Rule 605 error. And that's important because Rule 605 specifically says that you don't have to object in order to preserve it. And although the government doesn't... Well, counsel, the rule says that, but beyond the rule, didn't the defense counsel tell the judge that the judge could tell the jury that the video provided in discovery was the same as Exhibit 14? He did, but that was well after well after the fact. It was after the judge had already announced its ruling. And so that was the functional equivalent of saying it was after he'd announced his ruling and after he'd already overruled multiple objections. So it was a functional equivalent of saying no further objections. Well, but in addition to that, didn't defense counsel also tell the judge that the instruction that the judge proposed to give was okay? I don't think he said... Not on top of... I don't think there are two separate places where he agrees to... He agreed that as a matter of fact, his opinion was that he didn't think that the videos were any different, but that his client should be able to testify what he believes to. I don't think there are... As far as I know, there's not a separate place in the transcript where he agrees to the instruction other than at the very end. So the government proposes that the judge should instruct the jury that there is in fact only one video. The judge then asks defense counsel if he agrees with that or if he has any objections. He then starts to say that Mr. Anderson believes he could believe that there's a flying spaghetti monster. What I'm asking you is, do you have any evidence that the fact that the government is proffering is untrue? In other words, is there... Do you have any evidence that there is in fact another video? And he said no. So the judge then announced, then I'm going to give that instruction. I'm going to give the government's instruction. However, if you have any objections, I might reconsider. So at that point, the judge has already made up his mind. Nothing that the defense says after this fact induces the judge into making this erroneous instruction. He then tries to make another objection, which the district court quickly overrules. And only after all of that does he say, well, then I guess you can instruct the jury that way. So he's not inducing the court to make this erroneous instruction. He's not... He didn't make a 605 objection and then withdraw it. He never acknowledged 605. And in fact, he doesn't have to raise any 605 objection in order to preserve it for appeal. So there's no inducement and there's no intentional relinquishment of a known right that would constitute a waiver. Does he ever... I didn't find where he, other than saying okay, I didn't find where he suggested that the judge could go ahead and instruct the jury or that he was anywhere that he was actually agreeing with it other than saying okay at one point. It was just... It's at the very end, he says, you know, after everything that I've just gone through, the multiple objections, the judge's announcement that I'm going to do this unless you have a better objection, then I might reconsider. He overrules his other objection and at the very end, he says... He says okay. I think you can tell the jury that. Right. Okay. I think you can tell the jury that. I'm not seeing that. Sorry about that. Yeah. So why doesn't that... I mean, why isn't that a form of a so-called super waiver, an invited error, which seems to me overcomes even a rule 605 objection? Well, there's no invited error because he didn't... Invited error requires inducement. It's this idea... It's based on reliance interests. The appellate can't, in the lower court, have asked the judge or told the judge or encouraged the judge, induced the judge to do one thing and then on appeal say, aha, that judge made an error. It's like, well, no, you told them to make that error. You're the one who induced that error. That can't have happened here. There was no inducement because the judge had already made up his mind. He said, I am going to give the government's proposed jury instruction. However, if you have any further objection, I might reconsider. He didn't have another valid objection or he had one more, which the government overruled before he finally acquiesced. So at that point... Exactly. That doesn't speak consistent with a stipulation. We've held the stipulations to instructions. They don't have to be jointly proposed. They can just stipulate that the instruction can go forward, essentially. Right. And this court does... In the jury instruction context, if the government proposes an instruction, the defendant proposes an instruction, and then eventually the defendant agrees to some sort of compromise one, then this court has said, well, you ultimately agreed to that one. You withdrew your prior objection. But here there was no withdrawing of any of his prior objections. And again, he doesn't have to raise Rule 605 in the first place anyway. Here it was just the judge announced the ruling and said, do you have anything else? And so it would really just be... They're not magic words saying, okay, you can do that. It's the question that very often does lead to inducement, but it just didn't here because the judge had already announced his rule. Why? Okay. I understand your position on that. But the instruction was there is only one video here. That was the instruction of the jury, correct? Essentially, yes. Let me ask you this hypothetically. When the parties stipulate something, say they stipulate to a elements jury instruction, and because of that stipulation, the judge gives that instruction. Is that the judge testifying? No, Your Honor. There's certainly exceptions to the judge being able to introduce evidence in a way. I mean, the judge can present the party stipulations to the jury, but that usually comes in the form of a written stipulation that's given to the jury at the end of the oral stipulation in court that, say, it's an oral stipulation to a proffer from a witness who's not going to appear. And the judge gives that stipulation and states it like this. So-and-so, if they were to appear as a witness, would testify as follows, period. Is that the judge testifying? Or is that the judge delivering what is an agreement between the parties? Sure. The judge could do that. The judge can deliver stipulations of fact. The judge can also introduce evidence that's judicially noticeable. There certainly are exceptions. Not every time the judge tells the jury something. But here, this isn't a stipulation of fact. At least in this court's pattern jury instructions, stipulations-in criminal trials, the jury has to be told that they don't have to accept the party stipulations of fact. Here, that certainly didn't happen. The judge just told the jury a fact that was directly contradictory to what the defendant himself had testified. But it was consistent with what his lawyer said. His lawyer didn't have any evidence that that was-that that was-what the judge was instructing the jury was factually incorrect. That's true. But just because the defendant doesn't have any contrary evidence to a government's proffer doesn't mean that that-that the right to have the jury find those facts, you know, that the defendant no longer has that right. The defendant still has a six-amendment right to have the jury be the lie detector and the fact finder. And it's-it's-it's difficult to accept the fact that a-an attorney can-can at a sidebar stipulate to a fact that the-that his client has just testified under oath is not true. You know, the government hasn't argued that this was a stipulation of fact, so if that's really what the-what was going to be the linchpin of this court's decision, then I-then I might ask for some supplemental briefing on the issue. But I just can't imagine that-that a lawyer can stipulate to a fact that their own client just testified under oath was not true. And, you know, it-this was-it-it's the government's burden to prove that this was harmless beyond a reasonable doubt. As an initial matter, they don't actually take on the full extent of that burden in their answer brief. All right. Counsel, is-if-if there was error here, was it a constitutional error or a non-constitutional error? So, this court has held, uh, in NICL that a violation of Rule 605 is reviewed for constitutional harmless error, harmless beyond a reasonable doubt. Um, I think the invading of the province of the jury, uh, is-is a-is also grounded in, uh, the Constitution because the defendant has a Sixth Amendment right to have the jury be the fact-finder. Um, and-and Rule 605, it makes sense to-to apply a reasonable doubt standard, a harmless error standard to that because it-it really is constitutionally grounded. Um, you know, it's a due process violation to have the judge be the one testifying. Uh, you can't cross-examine a judge, so the right to confrontation, um, is-is invoked. Um, so it really is a constitutionally based error, and I think that's probably why NICL said that, um, it is reviewed for- Do-do you have-is there any other authority you've, uh, encountered, uh, holding that a Rule 605 is a constitutional error? Uh, I don't think so, Your Honor. Um, but, you know, NICL, um, expressly states that, and it is published Tenth Circuit case law, so I think it is, um, binding on this court, absent non-bonk review. Um, and I see that I'm running a little bit low on time. I'd like to save some time for rebuttal if there are no further questions from this court. Thank you, counsel. We'll now hear from Mr. Grewell. May it please the court, Bishop Grewell, on behalf of the United States. Uh, first, just the waiver question. This is at pages 454 and 455 of Appendix 3. Uh, Ms. Rangel proposes that you say the video that defense counsel just referenced is the same one as Government Exhibit 14. There is no other video. Uh, then page 455, the court says, then I agree with Ms. Rangel's proposal. That's what I'm going to do subject to your objection. If you have a good valid objection, I might reconsider. So the court had not already made its decision on what it was going to do. Mr. Bornstein then says, well, my objection is simply that I didn't bring Exhibit 14 to the jail. And the court says, but, but you've told, been told by the government that that video is Exhibit 14. At which point, Mr. Bornstein says the same. Okay. Then if the government, the government of course represents that the video given to me in discovery is the same as Exhibit 14. And I think you can tell the jury that, that seems to me to be an intentional relinquishment of a known right. He's saying, I think it's proper to do that now that I've got these facts in front of me. Uh, so I do believe it was a waiver. That's not exactly what, but that's not exactly what the court ultimately did tell the jury, is it? That the, that the video that he received was the same. I think it was a little different than that. Yeah. I believe what the court says is that, I think I have it right here, that the court says that, um, that Exhibit 14 is the only exhibit that there isn't another video, basically. More than that. There's more than that. I've got the transcript here. Hold on. I think the court says something about, that, that, that there's been some testimony that, that, that there might be another video and, and that you should not, that there isn't essentially. He, he basically says you can't infer that or the video is labeled. Yeah. There's, to the extent there was any implication that another video exists, that is not an accurate statement. So he, the court does more than what defense counsel agreed to, is my point. Uh, that there was only one video and I, yeah, I, I, well, I think it's what she's proposing on page 454. She says that the same one as government's Exhibit 14, there is no other video. So that's what she was proposing. And then he says, I'm fine with that. And that's what the court does. Um, what I want to turn now, wait, wait a minute, not so fast. It is true that the judge also effectively said what has been stated in court by the only person as the defendant is not true. Isn't that so? Uh, I think that's, that can be an implication, but that implication was in the instruction she proposed. And so simply on, on the waiver point, I agree that might affect the harm of this point. How is that an implication? The court says to the extent there was any implication that another video exists, that is not an accurate statement. What else would the court have been talking about? Right. And I, I, sorry, I'm, what I'm saying is when she says there is no other video in her proposed instruction, that same implication is there, uh, in what she's proposing. There's a difference between saying there's no other video and saying the defendant is lied essentially, I think. I don't think it's that the defendant lied. I guess you, you take the jury should have taken in the context of his numerous other statements that he was a drug addict and he had a ton of memory problems. And so I think the jury could simply take this as he was misremembering that part of the video, but given your concern, So that is a comment on the credibility of the witness generally, right? Which I think is way, but if the court disagrees, I think I should probably address the credibility can actually be harmless. Before you get that, do you think that a, a, uh, defense counsel can stipulate away, uh, the, the testimony of that lawyer's client? I actually think, and not to help Mr. Rochebeau here, but I think there's at least an unpublished decision by this court suggesting that when a defendant wants to make, it doesn't agree with factual stipulation that defense counsel can't do that over his counsel's objection. As Mr. Rochebeau pointed out, however, this has not been presented as a factual stipulation. Um, but, and, and I can certainly try to find that case and provide it to the court if, if it would be helpful. Um, so I would agree your honor that over that a counsel cannot factually stipulate to something, at least in that case, uh, if it's clear that the defendant himself doesn't want to actually stipulate. Can you say that there's a concession on appeal that that's all irrelevant because it's not a factual stipulation? I, they have not raised it as a, as a factual stipulation. It's simply raised as an, an instruction or as a comment by the, by the judge on the facts of the jury, what the jury could determine. Well, and you're, and you're saying, uh, to the extent they are saying it as a comment by the judge on the facts, uh, you're saying that it's okay for defense counsel to, to stipulate that away if you claim waiver, right? If it's a factual stipulation, then they couldn't, then they couldn't waive that. If that's how the court looks at it, then, then it could not be waived. And that's what you're saying. I would agree with that, your honor. Right. I want to turn now to the harmlessness and, and I want to go directly to it as commentary, um, as let's assume that the jury had counsel before you get to harmlessness have, uh, if, if there is no waiver or invited error, are you conceding error? We are conceding error, your honor, whether it's considered rule six or five error. I think in nickel, this court basically said a judge sort of taking a fact away from the jury like this is six or five error. The only point in our brief was it, it didn't seem like no respect, no disrespect to judge Murphy, but it didn't seem to us like that was the plain text, but I can understand why maybe that sort of error is going to get pushed in here. And so I do think related to your earlier question, I think they probably are two, two sides of the same coin for the, at least in this case. Um, but we are conceding that there's error and that's why we've spent our time arguing about harmlessness in the brief. Uh, unless there are further questions on that, I would, I would like to turn to the harmlessness inquiry. Uh, and, and I think the standard, and we are arguing harmlessness beyond a reasonable doubt that is the standard from nickel. Uh, we didn't put those magic words in our brief, but we did use the standard that judge Murphy applied in that case to decide harmlessness beyond a reasonable doubt, which is whether or not the competent evidence was sufficiently strong to conclude the improper evidence. I hear the judge's comment had no effect on the jury's decision. Page 1294 of the nickel decision. I think if you look at the, the evidence here, the reason that's the case is because even if the jury was going to believe the defendant here, his state, his testimony was as inculpatory, if not more so than exculpatory. He did make some conclusory statements about how he didn't distribute drugs and the like, but I would urge this court to look at several parts of his where he's asked on direct, actually, if you were not arranging to sell heroin or methamphetamine, what were you doing? His answer one day at night, we were together, a cousin of Armando's, and they had some packages with them and they wanted me to keep them for them in my house. And I told them, no, I told them, bury them out on the street. Why would you bury these packages out on the street? Because he knows they're drugs. Then he goes on to say, and we were parked in our cars like this. And the next morning he called and asked me to bring them out, but I didn't find it. Didn't find what? The packages that were hidden. Were those packages the drug packages? Yes, those are the packages that have been said to be drugs. I never even saw them. Then to page 418, sorry, not 418, page 440. You're in the green Tahoe in this part of the video. Yes, I'm with Armando. If you watch the video, at no point does it show who's in that green Tahoe. He's with Armando. Page 448 and 449 then of the record. And going back to your conversation with him, you mentioned that there were no drugs at your property. Well, I didn't have anything and I didn't even have them in my hands in the video. I didn't have them. I mean, I don't know if maybe they were out at the ranch. I don't know. Then he goes on, he's asked, okay, but you also told him that people deliver drugs to you to be distributed. No, we just bought little bits at a time for our own use. And people hear about that and they come and they come and they give me a little bit. And when I have any, I give it to them. And then the next page, 449, you refuse to tell law enforcement on November 6th, 2017, who delivered drugs to you. Answer, nobody, nobody ever delivers drugs to me. It was just that one time with Charo and with Armando, but I don't remember when that was. That's what they wanted. I, I, I don't remember when, uh, he's effectively admitting to the fact that he was distributing drugs in those different statements that he was here there at the time that he was in the green taco with Armando. And then at no point in his testimony, does he challenge the numerous pieces of substantive evidence, putting him there in his own admissions that are on audio and video. He doesn't challenge the phone calls before where the CI and he are setting up these meetings talking about cars and cheese and horses. He doesn't challenge any other part of the video about the day the drug deal only the shot where you see the hands. He says, I saw one where you don't see the face of the person. That's all he challenges. He doesn't say he wasn't there that he didn't have these conversations that this whole other stuff went on the numerous times in that video. He's talking about how much meth the CI wanted and encouraging him to take two on this on that tape. He never questions the CI when the CI is referencing crystal meth or the black, he doesn't, he doesn't act confused as to why they're meeting. When the CI asked and the solar, how much crystal he has with him, he says two. And then when the CI refers to the crystals meth, he isn't saying, no, I'm talking about chandeliers. He says that one is clean. And then numerous times before the drugs are passed off, he said, he's repeatedly asking if the CI wants to, and it's two pounds of drugs, two pounds of meth that are found in the car. The officers had searched the car before it went off. You have continuous video throughout showing this. There's no break in the video that's shown. And then now all of a sudden we have drugs afterwards. And he doesn't challenge the audio and video of the February 23rd meeting with the DEA agent who wasn't running this investigation. He was just simply brought in because he spoke Spanish. So he's brought in for this one segment and they meet and and the soul is on there. And he isn't confused about the quantities of drugs that are being talked about. He's the one asking the agent if he wants crystal and saying he'll throw in the good stuff white, i.e. cocaine. He's the one talking prices on kilos and saying that's what the powder is going for. He's the one talking. But you're talking now about a transaction for which he was not indicted. Well, this is where he goes and collects the money from that transaction, and then he's starting to do another another drug deal. It's the other drug deal that is the subject of the indictment, right? Certainly. But I think both the fact that he's collecting money from the one that's charged and then he's arranging another one is evidence that that showing again whether it's part of the sufficient evidence showing that this error here didn't affect anything because the jury is going to say, OK, you collected here, you're having it, you're collecting money here, discussing drugs again. Well, what is it you're collecting money for? Yes, the fact that you did a drug deal earlier. And when you're talking about you use the word sufficient evidence, that's that's not the approach we take, is it? No, sorry. That's misspeaking that it was that the other evidence is sufficiently strong to determine that this comment didn't affect the jury's verdict. And so basically the fact that he's not challenging any of his own incriminating statements, his own words before the deal, his own incriminating statements on the day of the deal and his own incriminating statements when he's collecting the money, combined with the fact that the drugs are then found and all of his testimony that further inculpated him saying, yeah, go buried in the street. Yeah, it was Armando came over. Yeah, that's me and Armando in the car. Well, no, I didn't. Drugs weren't delivered to me. Well, that one time with Armando and Charo. Yeah. Well, no, I didn't distribute drugs. We just got some for ourselves. Well, yeah, sometimes I'd give them to other people. All of that evidence, combined with all of the physical audio, video and drug evidence that he didn't challenge here meant that the nickel standard that the competent evidence was sufficiently strong to conclude the judge's comment had no effect on the decision was met here. And we would ask this court to find that the error, if it wasn't waived, was harmless beyond a reasonable doubt. Happy to answer any other questions the court might have or see the remainder of my time. Thank you, counsel. Thank you, Mr. Rosh. You have some rebuttal time. Thank you, Your Honor. I just want to emphasize what the harmlessness beyond a reasonable that standard isn't and what it is. It's not whether this court would find him guilty beyond a reasonable doubt or whether or whether even a hypothetical reasonable jury would find him beyond a reasonable doubt in a hypothetical trial where this erroneous instruction wasn't given. It was whether the verdict actually rendered in this case was beyond a reasonable doubt, unattributed to the air. And it's impossible to say that it is here where this was clearly such a big moment in the trial where the district court instructs the jury that the defendant had fabricated evidence was simply not true. It completely undermined his credibility and and his entire defense. And I just don't think that this court could confidently say beyond a reasonable doubt that the actual verdict was not attributable to the air. It seems like so much of the tape, independent of this controversy over a little part of it, that the defendant raised is vast and establishes perhaps guilt beyond a reasonable doubt, independent of the portion of the tape that may be contested by the defendant. Is that the way we look at it? No, Your Honor. And I, you know, I would grant you that there is the government, there's, you know, there is sufficient evidence to find him guilty beyond reasonable doubt. And, you know, as you pointed out, that's that's definitely not the standard here. And, you know, the question I see that amount of time, if I could just give a little bit, let's continue this conversation, please. Thank you, Your Honor. You know, it's not whether there's sufficient evidence or whether, you know, that this court would find him guilty beyond a reasonable doubt. There's certainly plenty of evidence in the record that went unrebutted by his testimony. But he still had a constitutional right to have the jury decide whether to have the jury assess his credibility independently. You know, it may not be the most compelling defense. But his credibility is to be judged, is his credibility on the witness stand. But isn't that entirely separate than his credibility on the tape, the portion of the tape that's uncontested? And if you look at that, doesn't that suggest that the error of the statement by the district court was harmless beyond a reasonable doubt because it only reflects a little bitty portion of the tape, where the vast amount of the tape, you know, he doesn't contest. So that's what happened. Right, Your Honor. I think that narrowly focusing on the small portion of the tape that was disputed is too narrow of a focus because, yeah, if whether or not that's him is not necessarily the, the heart of the case. But what would become the heart of the case and the heart of the defense is if even one juror credited his allegation that the government in this case, that the officers in this case had manufactured evidence. If the jury credited that allegation that this evidence was, was, you know, it was just a deep fake video, then, you know, the government's case can crumble like a house of cards. At that point, what other evidence is fabricated? Certainly wouldn't be the first time that, you know, that the law enforcement planted evidence and it wouldn't be the first time that a jury acquitted based on those types of allegations. Would you concede that the approach you just stated at least borders a per se prejudicial error under 605? That 605 is really a per se rule? I wouldn't say that it is a per se rule. I mean, I think in this case, the, the, it is so extreme that it sort of is like a structural error adjacent in that what the judge's instruction was went directly to the defendant's credibility. He basically called them lying on the stand. And it was just so central. It's hard to measure the impact of that or hard to say that the, that that such an egregious error is, is completely harmless. I can imagine much more harm, like very obviously harmless rule 605 violations. For example, if the judge was just correcting the testimony of an agent who, let's say, you know, from a suppression hearing, a judge knows that the car was red, not blue, but it's just a minor detail. The cop testifies that the car was red at trial. And he says, the judge interjects and says, actually, the car was blue. Obviously, that has nothing to do with the jury's verdict. Then you could say that, you know, that is surely unattributable to the jury's verdict in this case. But in this case, where he essentially told the jury, instructed the jury that they couldn't believe him. It's hard to say that, that there would be a time where that is harmless. Thank you. Owners. I'm well over time. Thank you. Don't ask you to vacate his conviction. Thank you, counsel. The case will be submitted. Mr. Ross, you may be excused. Mr. Groyle, you're on the next case. So you're not excused yet.